IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Cliff Weaver, ) | C/A No.: 1:12-2870-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.      Relevant Background

   A.      Procedural History

On June 9, 2005, Plaintiff filed an application for DIB alleging an onset date of February 27, 2004. Tr. at 117. His application was denied in November 2005 following initial review and Plaintiff did not appeal. *Id.* Plaintiff filed a second DIB application on September 29, 2006, also alleging an onset date of February 27, 2004. *Id.* The second application was denied in January 2007 following initial review and Plaintiff did not appeal. *Id.* On December 23, 2008, Plaintiff filed a third DIB application in which he alleged his disability began on February 27, 2004. Tr. at 98–101. His application was denied initially and upon reconsideration. Tr. at 48–49. On September 10, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Richard Vogel. Tr. at 28–47 (Hr'g Tr.). The ALJ issued an unfavorable decision on October 1, 2010, finding that the doctrine of res judicata barred Plaintiff's claim for the period of February 27, 2004, through January 11, 2007, because Plaintiff's prior and pending applications involved the rights of the same party, the same material facts, and the same issues. Tr. at 14, 16. The ALJ further found that Plaintiff was not disabled within the meaning of the Act from January 12, 2007, through December 31, 2009, the date last insured. Tr. at 23. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 4, 2012. [Entry #1].

B.  Plaintiff's Background and Medical History

1.  Background

Plaintiff was 35 years old at the time of the hearing. Tr. at 102. He completed high school with a diploma, but attended self-contained special education classes. Tr. at 326. His past relevant work ("PRW") was as a carpenter, dock hand, elevator technician, heavy equipment operator, and tree trimmer. Tr. at 140. He alleges he has been unable to work since February 27, 2004. Tr. at 98.

2.  Medical History

On February 27, 2004, Plaintiff presented to the emergency room after falling 10 to 12 feet down an elevator shaft. Tr. at 245–47. His resulting injuries necessitated three surgeries on his left foot from 2004–2006 (Tr. at 247, 255–58, 266–67) and one back surgery in 2008 (Tr. at 284–85). The record in this case consists primarily of medical records related to Plaintiff's physical impairments; however, Plaintiff's allegations of error are solely related to his mental competency. Consequently, the undersigned finds that an exhaustive recitation of Plaintiff's medical history is not necessary and focuses instead on the records addressing Plaintiff's mental status.

Plaintiff presented to the Counseling Center of Georgetown from November 2004 to August 2005 for physical therapy and counseling for major depression, anxiety, and mood disorder. Tr. at 215–44.

On August 22, 2005, Ms. Enola Davis Bluemel completed a vocational evaluation of Plaintiff, in which she reported that Plaintiff was administered several vocational tests, which indicated average verbal intelligence; a third grade level in spelling and word

3

pronunciation; a fourth grade level in arithmetic; and a 5.6 grade level in vocabulary and reading comprehension. Tr. at 382–86. Ms. Bluemel opined that Plaintiff would need to receive specially designed remedial education in reading comprehension and mathematics prior to attempting any kind of classroom education where he would be reading textbooks or manuals, or taking copious notes. Tr. at 386. She further opined that, because of Plaintiff's "current level of functioning, a real and viable base of jobs d[id] not exist in the local or national economy." *Id.* On August 8, 2006, Ms. Bluemel provided that Plaintiff was of average intelligence but functionally illiterate, and again opined that because of his "current level of functioning, a real and viable base of jobs d[id] not exist in the local or national economy." Tr. at 388–89.

On February 26, 2009, Dr. Cashton Spivey performed a consultative psychological evaluation of Plaintiff, who reported depression, sleep disturbances, and a history of learning difficulties including attending self-contained special education classes in high school. Tr. at 326–29. Plaintiff stated that he lived with mother, bathed and dressed independently, prepared simple meals, and managed his own finances. Tr. at 327. He believed he was unable to read a newspaper or perform simple arithmetic calculations. *Id.* On the WAIS-III test, Plaintiff obtained a verbal IQ score of 78, a performance IQ score of 97, and a full scale IQ score of 85. Tr. at 328. Dr. Spivey stated that Plaintiff operated primarily in the lower average intellectual range. *Id.* On the WRAT-3 test, he scored at the third grade level for reading and spelling and the fourth grade level for arithmetic. *Id.* His reading and spelling scores were in the mentally retarded range. *Id.* Dr. Spivey opined that Plaintiff appeared to be of low average general intelligence with

4

satisfactory visual-motor functioning and significant academic achievement deficits. Tr. at 329. He further opined that Plaintiff suffered from depressive disorder and an anxiety disorder, as well as alcohol dependence that was in partial remission, and that he could possibly have difficulty managing his funds independently and accurately. *Id.* He assessed Plaintiff with a Global Assessment of Functioning ("GAF")[2] score of 50. *Id.*

On March 3, 2009, Dr. Dyana Lowndes-Rosen, M.D., evaluated Plaintiff in conjunction with his worker's compensation claim. Tr. at 331. She assessed him with a mood disorder due to his general medical condition and a pain disorder due to psychological factors and a general medical condition. Tr. at 333. Dr. Lowndes-Rosen prescribed Cymbalta and planned to increase Plaintiff's Neurontin at his next visit. *Id.*

On March 9, 2009, Dr. Michael Neboschick, a state-agency psychologist, reviewed the evidence of record and opined that Plaintiff was learning disabled, had a prior history of alcohol abuse that was in partial remission, and suffered from a non-specific depressive disorder and non-specific anxiety disorder. Tr. at 334–42. The doctor further opined that Plaintiff had mild limitations in activities of daily living (ADLs); moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. at 344. Dr. Neboschick found that Plaintiff suffered from some moderate limitations (Tr. at 348–49), which allowed him to perform simple tasks for at least two-hour periods of time while occasionally missing a day of work secondary to his symptoms; perform

---

[2] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 n. 1 (9th Cir. 1999).

single, repetitive tasks without special supervision; attend work regularly and accept supervisory feedback; and perform best at a job that did not require continuous interaction with the public. Tr. at 350.

On June 9, 2009, Dr. Lisa Varner, a state-agency psychologist, reviewed the evidence of record and opined that Plaintiff suffered from mood, depressive, anxiety, and substance abuse disorders that resulted in mild limitations in ADLs; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. at 355–65. Dr. Varner further opined that Plaintiff suffered from some moderate limitations (Tr. at 369–70), which allowed him to understand and remember simple instructions; carry out short and simple instructions; maintain concentration and attention for periods of at least two hours; perform best in situations that did not require on-going interaction with the public; and be aware of normal hazards and take appropriate precautions, but need some assistance in establishing realistic goals. Tr. at 371.

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the hearing on September 10, 2010, Plaintiff testified that he is divorced and lives alone. Tr. at 31. He stated that he became disabled after falling down an elevator shaft. Tr. at 34. He said that his fall resulted in three foot surgeries on his left foot and a back surgery. *Id.* He described his physical symptoms as lower-back pain, sharp pain and high sensitivity to touch in his left foot, and pain radiating down both legs. *Id.* He

stated that his surgeries, narcotic pain pills, and "nerve-ending pills" dulled his symptoms, but never made them go away fully. Tr. at 35–36. He testified that his medications caused occasional drowsiness and made him feel "loopy" if he had not recently eaten. Tr. at 36. He testified that his symptoms made walking and standing problematic and that if he sat too long, his back would freeze up. Tr. at 37. He said he used an electrical device stimulator (TENS unit) after his back surgery, but that the device was stolen and he could not replace it. Tr. at 42.

Plaintiff stated that he had a hard time reading and could read "just enough to get by." Tr. at 37. He said his math skills were okay as long as he had a calculator. Tr. at 38. He testified that he was once fired from a job at a gas station because he "couldn't keep the paperwork straight." *Id.* He stated that he felt comfortable lifting 10 to 15 pounds, could not kneel, and had a hard time stooping and crouching. Tr. at 38–39. He said he spent his days watching television and playing video games. Tr. at 40.

### b. Vocational Expert Testimony

Vocational Expert ("VE") Robert Brabham reviewed the record and testified at the hearing. Tr. at 44. The VE testified that all of Plaintiff's PRW was at the medium, heavy, or very heavy exertional level. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform only sedentary work; could never climb, crawl, or kneel; could occasionally crouch and stoop; would require a sit/stand option at will with no exposure to industrial hazards; would require a low-stress setting with no more than occasional decision making or changes in the setting; and would not be able to engage in any complex reading, writing, or mathematical computation. Tr. at

*Id.* The VE testified that the hypothetical individual could perform the jobs of machine tender, assembler, and surveillance monitor. Tr. at 44–45. Upon questioning by Plaintiff's counsel, the VE testified that a person who was unable to attend, focus, concentrate, and complete tasks due to pain or medication side effects for up to 20 percent of the workday would be unable to engage in gainful employment. Tr. at 45–46.

    2.    The ALJ's Findings

In his decision dated October 1, 2010, the ALJ made the following findings of fact and conclusions of law:

1. The doctrine of <u>res judicata</u> is applicable to the issues of disability between the claimant's alleged onset date of disability of February 27, 2004 and January 11, 2007, inasmuch as the same parties, material facts, and issues were involved in the prior decision. 20 C.F.R. §§404.957(c) and 416 1457(c).
2. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.
3. The claimant did not engage in substantial gainful activity during the period from January 12, 2007 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).
4. Through the date last insured, the claimant had the following severe impairments: depression and status-post foot and back surgeries (20 CFR 404.1520(c)).
5. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
6. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to: sit for 6 hours of an 8-hour day; stand/walk for 2 hours of an 8-hour day; frequently lift/carry light items; occasionally lift 10 pounds; never climb, crawl, or kneel; occasionally crouch and stoop; and never be exposed to hazards. He would require a sit/stand option at will. He would also be limited to low-stress work, defined as no more than occasional decision making, which does not require complex reading, writing, or math.
7. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on December 20, 1975 and was 34 years old, which is defined as a younger individual age 18–44, on the date last insured. (20 CFR 404.1563).
9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
10. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
11. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
12. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 12, 2007 through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

Tr. at 16–23.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)  the ALJ misapplied the doctrine of res judicata to Plaintiff's previous DIB applications; and

2)  the ALJ failed to carry the Commissioner's burden at step five of the sequential evaluation process.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

       2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g).

The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

1. Res Judicata

Plaintiff argues that the ALJ erred in applying the doctrine of res judicata to his prior claims because his mental impairments prevented him from understanding the

Commissioner's procedures for requesting review of determinations made at the initial claims level. [Entry #15 at 8–11]. Plaintiff cites to *Schrader v. Harris*, 631 F.2d 297 (4th Cir. 1980), for the proposition that, to avoid violating a claimant's due process rights, the Commissioner must conduct a hearing before invoking the doctrine of res judicata to bar a subsequent claim in cases involving mentally ill, pro se claimants. [Entry #15 at 8].

In *Schrader*, the Fourth Circuit held that a hearing is only required when claimants have presented prima facie evidence of incompetency. *See Schrader*, 631 F.2d at 302. "The opinion does not require the Secretary to make initial inquiry about the mental competency of each applicant, nor does it require the Secretary to provide counsel to mentally ill claimants." *Schrader*, 631 F.2d at 302. Likewise, Acquiescence Ruling ("AR") 90-4(4), cited by Plaintiff and applicable to decisions within the Fourth Circuit, provides that a claimant must present a prima facie case of mental incompetence before the Social Security Administration is required to determine whether the claimant had the mental competence necessary to request review of a prior determination.[5]

Plaintiff asserts that he made a prima facie showing that his "mental impairments prevented him from understanding the Commissioner's procedure for requesting review of determinations made at the initial level dating back to 2004." [Entry #15 at 11]. This

---

[5] When the SSA determines a ruling by a United States Court of Appeals conflicts with its interpretation of the Act, it issues an AR describing the court decision, identifying the issues involved, and explaining how SSA will "apply the [court's] holding to claims at all levels of the administrative review process within the applicable circuit." 20 C.F.R. § 404.985(a). AR 90–4(4) discusses a conflict between 20 C.F.R. § 404.988 and the Fourth Circuit's rulings in *Culbertson* and *Young*. "The regulations do not provide that a final determination or decision can be reopened and revised if the claimant can establish that he or she was unrepresented and lacked the mental competence to request administrative review." AR 90–4(4).

assertion is based on what he contends is a documented history of dyslexia, ADHD, major depression, a mood disorder, and elementary-level reading, spelling, and arithmetic scores. *Id.* at 10. The Commissioner responds that Plaintiff has failed to present prima facie evidence demonstrating that he was incompetent at the time his initial claim was rejected. [Entry #17 at 10].

In support of his alleged prima facie showing of incompetence, Plaintiff cites to a diagnostic interview report from the Counseling Center of Georgetown dated November 9, 2004. [Entry #15 at 10 (citing Tr. at 215–17)]. He contends that the report demonstrates a history of dyslexia and ADHD; however, those conditions were self-reported by Plaintiff and not diagnosed by the treating physician. Tr. at 215. The interview report contains diagnoses of major depression accompanied by severe fear and of a mood disorder due to his medical condition (Tr. at 217), but there is no indication that these impairments were severe enough to render Plaintiff incompetent.

Plaintiff also cites to the records of Ms. Bluemel and Dr. Spivey indicating that he scored on the third grade level in reading and spelling, scored on the fourth grade level in arithmetic, and fell within the mentally retarded range based on his reading and spelling scores. [Entry #15 at 10]. The Commissioner contends that these reports conflict with the record evidence regarding Plaintiff's competency. [Entry #17 at 11]. For example, a report of contact with SSA indicates that when asked, Plaintiff stated that he had no problems following the instructions or completing the tasks assigned to him at his prior jobs. Tr. at 160. Although he reported difficulties with reading and spelling, he stated that his math skills improved by the end of high school. *Id.* He also stated that he was

14

able to watch an entire movie, played solitaire on the computer, performed woodworking as a hobby, and played video games for two to three hours at a time. *Id.* In addition, the 2004 interview report referenced above documented that Plaintiff had intact memory, cognitive function, abstraction, judgment, and insight. Tr. at 217.

The undersigned agrees that based on the record evidence, Plaintiff did not make a prima facie showing that he was not competent at the time of the earlier denials. Furthermore, the ALJ made clear during the hearing that he was considering whether res judicata would apply based on Plaintiff's prior claims. Tr. at 33. Although Plaintiff's counsel stated that she was taking the position that res judicata did not apply, she did not provide any reason for her position and did not identify mental competency as an issue. Tr. at 33–34. For these reasons, the undersigned recommends a finding that the ALJ did not err in applying the doctrine of res judicata for the period of February 27, 2004, through January 11, 2007.

      2.    Step Five Findings

Plaintiff also asserts that an alleged conflict between the VE's testimony and the educational requirements in the Dictionary of Occupational Title ("DOT") for the jobs he identified constitutes reversible error. [Entry #15 at 11–13]. Plaintiff specifically argues that the jobs identified by the VE require reasoning levels beyond his capabilities. *Id.* at 12. The Commissioner contends that the reasoning levels set forth in the DOT are consistent with the RFC assessed by the ALJ. [Entry #17 at 14–18].

The VE testified that a hypothetical individual with Plaintiff's vocational and educational background and RFC would be able to perform the jobs of machine tender,

assembler, and surveillance monitor. Tr. at 44–45. The DOT provides that the jobs of machine tender (DOT #731.685-014) and assembler (DOT #739.684-094) have a reasoning level of 2, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and the ability to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DOT (4th Ed., Rev. 1991), *available at* 1991 WL 679811 (DOT #731.685-014) and 1991 WL 680137 (DOT #739.684-094). The job of surveillance monitor (DOT #379.367-010) has a reasoning level of 3, which requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT (4th Ed., Rev. 1991), *available at* 1991 WL 673244. A surveillance monitor is also required to have a reading level of 3, which requires the ability to read "a variety of novels, magazines, atlases, and encyclopedias" as well as "safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work." *Id.*

Plaintiff contends that the jobs identified by the VE all require a reasoning level beyond Plaintiff's capabilities and beyond the RFC assessed by the ALJ. [Entry #15 at 12]. Plaintiff further contends that the language level required of a surveillance monitor exceeds his capabilities. *Id.* While not explicitly stated by Plaintiff, it appears these arguments are premised on his history of dyslexia, ADHD, major depression, a mood disorder, and elementary-level reading, spelling, and arithmetic scores.

The ALJ limited Plaintiff to low-stress work, defined as no more than occasional decision making, which does not require complex reading, writing, or math.  Tr. at 19.  The primary issue with the jobs of machine tender and assembler is whether a reasoning level of 2 requiring the ability to carry out "detailed but uninvolved" instructions conflicts with the ALJ's finding that Plaintiff could not engage in complex reading, writing, or math.  This court has previously held that a reasoning level of 2 is generally consistent with an RFC limiting the plaintiff to "simple, repetitive tasks and instructions." *Lindsey v. Astrue*, C/A No. 9:10-1079-CMC, 2011 WL 2214779, at *4 (D.S.C. June 7, 2011).  In so holding, the court stated that the limitation to "simple" instructions is generally consistent with the ability to carry out instructions that are "detailed but uninvolved."  *Id.* (citing *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'")).  In this case, Plaintiff's limitation to no complex reading, writing, or math is equivalent to a limitation to simple, repetitive tasks and instructions.  Therefore, based on *Lindsey*, the undersigned recommends finding that there was no conflict between the RFC limitations assessed by the ALJ and the DOT requirements for the jobs of machine tender and assembler.

With regard to the job of surveillance monitor, the undersigned recommends a finding that the reading level of 3 exceeds Plaintiff's capabilities as demonstrated on the reading testing performed by Ms. Bluemel and Dr. Spivey.  However, because Plaintiff's RFC was consistent with two of the three jobs identified by the VE, the undersigned

17

further recommends that any error related to the job of surveillance monitor was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").

Based on the foregoing, the undersigned recommends affirming the ALJ's step five determination that Plaintiff is capable of performing other work available in the national economy.

III.   Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 12, 2013                                    Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).